UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAASHAD CARTER, | No. 08 CV 2381 JCW |
| Plaintiff, | <u>ORDER GRANTING DEFENDANTS'</u> |
| vs. | <u>MOTION FOR SUMMARY JUDGMENT</u> |
| L. CANNEDY, et al., | <u>(DKT. 77)</u> |
| Defendants. | |

I have received, read, and considered Defendants' motion for summary judgment (dkt. 77), Plaintiff Raashad Carter's opposition (dkt. 80), Defendants' reply (dkt. 81), and the related papers. For the reasons explained below, Defendants' motion for summary judgment is granted.

**I.**

In the operative Second Amended Complaint (dkt. 49) (SAC), Carter alleges that defendants L. Cannedy, S. Rivas, D. Lieber, R. Mandeville, and M. Reyes are liable under 42 U.S.C. § 1983 for violating Carter's right to due process in connection with a prison disciplinary hearing.

According to the SAC, on November 21, 2007, Carter was placed into administrative segregation for suspicion of battery on an inmate. SAC ¶ 10. Carter alleges that Rivas failed to uphold his responsibility to give Carter non-confidential photographic evidence that was to be used against him. SAC ¶¶ 12–13, 42. Carter alleges that Cannedy, who was the hearing officer for Carter's January 9, 2008 disciplinary hearing, refused to continue the hearing to give Carter the opportunity to receive all non-confidential evidence and inappropriately relied on three confidential reports by not individually addressing the reliability of the information in each confidential report, which resulted in Carter being found guilty. SAC ¶¶ 14, 16, 40–41. Carter alleges that Lieber and Mandeville reviewed the adjudication report on January 25, 2008 and failed to act on the alleged due process violations. SAC ¶¶ 17–18, 43–44. Carter alleges that on February 6, 2008, he complained to Reyes about the claimed due process violations but that Reyes failed to review the adjudication report properly and act on the due process violations. SAC ¶ 20, 45–46. Carter filed an inmate appeal on February 6, 2008. SAC ¶ 21.

Carter was in administrative segregation until March 19, 2008, when he was transferred to Corcoran Security Housing Unit. SAC ¶ 22, 27. On March 27, 2008, Carter's appeal was granted, his guilty disposition was vacated, and a new hearing was ordered. SAC ¶ 28. On August 22, 2008, Carter was found not guilty of battery on an inmate at the second hearing because the second hearing officer determined the confidential information to be non-reliable. SAC ¶ 36. On January 6, 2009, Carter was transferred back to the general population. SAC ¶ 38.

Defendants contend that summary judgment should be granted because (1) Carter's placement in administrative segregation and Security Housing did not subject him to an atypical and significant hardship; (2) even if Carter was subjected to an atypical and significant hardship, Carter received all the process that he was due under the United States Constitution; and (3) even if there was a due process violation, Defendants are entitled to qualified immunity. I agree with Defendants that Carter has failed to present sufficient evidence to sustain his claimed due process violation, so I need not reach the question of qualified immunity.

**II.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets its initial responsibility to inform the district court of the basis for its motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the burden shifts to the opposing party to come forward with specific facts showing that a genuine issue of material fact exists, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). I conclude that all Defendants have met their initial responsibility to show the absence of a genuine dispute as to a material fact, and that Carter has failed to come forward with specific facts showing that a genuine issue of material fact exists.

**A.**

Under the Due Process Clause of the Fourteenth Amendment, a prisoner is entitled to due process if the state "imposes some 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)). I look to three guideposts to frame the inquiry into whether conditions are "atypical and significant": (1) whether the conditions mirror those imposed upon inmates in administrative segregation, and thus comport with the prison's discretionary authority; (2) the duration of the conditions; and (3) whether the duration of the prisoner's sentence was affected. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). "Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Id.*

Defendants argue that Carter's placement in administrative segregation and later Security Housing did not impose an atypical and significant hardship. In support, they cite portions of Carter's complaint, a declaration from R. Taylor stating that the prison cells in administrative segregation were at least as big as Carter's prior cell, and Cal. Admin Code. tit. 15, § 3343,

which provides that in segregated housing, meals should be the same as in the general population; mail is not restricted, except that incoming packages may be limited in number and in content to property permitted in segregated housing; inmates are allowed non-contact visits; inmates are permitted a minimum of three days per week of exercise for ten hours; library services are provided; and inmates will have access to education services if they can be reasonably provided without endangering security or safety. This is sufficient to meet Defendants' initial responsibility to show the absence of a genuine issue of material fact.

In response, Carter fails to carry his burden to show that a genuine issue of material fact exists as to whether his placement in administrative segregation and Security Housing imposed an atypical and significant hardship. Carter's declaration and documents he submits in opposition to summary judgment do not bear on the conditions of his confinement. Instead, Carter rests on the allegations in his complaint. But an allegation in a complaint, unsupported by an affidavit or other materials in the record such as depositions, documents, admissions, or interrogatory answers, cannot withstand a motion for summary judgment. *Maraziti v. First Interstate Bank of Cal.*, 953 F.2d 520, 524 (9th Cir. 1992); Fed. R. Civ. P. 56(c).

Even if I were to treat Carter's opposition brief as a declaration, there would not be sufficient factual material to raise a genuine issue of fact as to whether his transfer to administrative segregation and Security Housing constituted an atypical and significant hardship. Carter alleges that in administrative segregation or Security Housing (1) he was forced to wear a t-shirt and boxers; (2) he was denied contact visits with family; (3) he was not able to exercise with the general population; (4) the cell was smaller by an unspecified amount; (5) the cell toilet faced the bottom bunk; (6) there were only two windows, one of which was covered in dirt; and (7) the view from the cell was a wall outside instead of the dayroom. There is no evidence that these conditions differ from typical administrative segregation conditions, and Carter's sentence to prison was not affected. Thus, even though the conditions were imposed over a substantial period of time, the conditions were not an "atypical and significant hardship." *See Sandin*, 515

1  U.S. 472 at 486 (no atypical and significant hardship where conditions in disciplinary segregation
2  "mirrored those conditions imposed upon inmates in administrative segregation and protective
3  custody"); *Toussaint v. McCarthy*, 801 F.2d 1080, 1114 (9th Cir.1986) (denial of contact visits
4  "is part of the penalty that criminals pay for their offenses against society"), *overruled on other*
5  *grounds by Sandin*, 515 U.S. 472.
6      Carter also alleges that staff in Security Housing was notorious for allowing inmates to be
7  harmed. However, he provides no specific factual information to support this allegation, such as
8  an example of any specific incident that caused the notoriety. Carter's conclusory and self-
9  serving statement, even if it were in the form of a declaration, would not be sufficient to avoid
10 summary judgment. *See F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th
11 Cir. 1997).
12     Although I previously ordered service of the Second Amended Complaint because Carter
13 had a reasonable opportunity to prevail on the merits of the action based on his allegations, and
14 because he provided sufficient detail to support his claim at *that* stage of litigation (dkt. 51),
15 Carter has now provided insufficient evidence to flesh out his allegations in response to
16 Defendants' motions for summary judgment. *Cf. Jackson v. Carey*, 353 F.3d 750, 756 (9th Cir.
17 2003) (when holding inmate's allegations sufficient under Rule 12(b)(6), distinguishing *Sandin*
18 because *Sandin* was reviewing a summary judgment).
19     In sum, summary judgment is warranted because Carter fails to raise a genuine issue of
20 fact as to whether his conditions in administrative segregation or Security Housing constituted an
21 atypical and significant hardship.

**B.**

23     Even assuming, counterfactually, that Carter had demonstrated an atypical and significant
24 hardship, the undisputed facts show that he received all process that was due under the
25 Fourteenth Amendment. As the Ninth Circuit has properly and effectively stated:
26

5

> Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action. The inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals. Due process does not require that an informant's identity be revealed to an inmate. Findings that result in the loss of liberty will satisfy due process if there is some evidence which supports the decisions of the disciplinary board. . . .
>
> [A] prison disciplinary committee's determination derived from a statement of an unidentified inmate informant satisfies due process when (1) the record contains some factual information from which the committee can reasonably conclude that the information was reliable, and (2) the record contains a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name. Review of both the reliability determination and the safety determination should be deferential.

*Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987) (citations omitted). I conclude that due process has been satisfied under these standards.

Carter contends that he was denied due process because Cannedy failed to evaluate the reliability of the confidential sources she relied on and put her determination into the fact finding portion of Carter's final adjudication report. However, the undisputed facts show that Carter received all the process to which he might have been entitled. The report signed by Cannedy states: "Three independent confidential documents were reviewed. Each reflected statements corroborating the activities of inmate CARTER in conjunction with others regarding this incident." Def's Ex. B at 3. It also states: "This Senior Hearing Officer has reviewed the confidential information and the confidential disclosure forms and IS satisfied that the degree of reliability and corroboration of involvement of each source meets all established criteria of CCR Section 3321." *Id.* The record before Cannedy contained some factual information from which she could reasonably conclude that the information was reliable, namely the three confidential reports, one of which was deemed reliable by the generating correctional officer because part of the information provided by the source had already proven to be true, and two of which were deemed reliable by the generating correctional officer because more than one source independently provided the same information. Def's Ex. B at 12–14; *see Zimmerlee*, 831 F.2d at

6

186 (reliability may be established by corroborating testimony). The record also contained prison officials' affirmative statements that safety considerations prevented the disclosure of the informant's names. Def's Ex B at 3, 12–14. Due process requires no more. That the confidential informants were later deemed unreliable by another hearing officer over eight months later does not raise a genuine issue of fact as to whether the information available to Cannedy at the time of the initial hearing was sufficient for her to conclude that the confidential information was reliable.

Carter also contends that his right to due process was violated because there was not "some evidence" to support Cannedy's guilty determination. Defendants argue that *Swarthout v. Cooke*, 131 S. Ct. 859 (2011) precludes review of the substance of Carter's hearing, but I disagree. In *Swarthout*, the Court declined to review a California parole decision for "some evidence" in a habeas matter because "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Id.* at 862. In *Sandin*, however, the Court stated that the imposition of an "atypical and significant hardship" *did* give rise to an interest protected by the federal Due Process Clause. 515 U.S. at 484.

Never the less, Carter's argument fails because the information in the confidential reports, all of which implicated Carter as an attacker, constitutes some evidence in support of Cannedy's guilty determination.

Carter's claim that his right to due process was violated when (1) Rivas did not provide him with photographs used against him, and (2) Cannedy did not continue the hearing to permit him to obtain the photographs, also fails. Carter received written notice of the charges and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action, which is sufficient to satisfy due process; Carter does not have a due process right to advance notice and disclosure of every document relied upon by the hearing officer. *Zimmerlee*, 831 F.2d at 186. The photographs at issue depicted the victim's injury. Def's Ex. B at 3. Carter never

7

argued that there was no attack, and the photographs were not relevant to Carter's defense that he was not the one who participated in it. Therefore, his right to due process was not violated even assuming the photographs were not disclosed.

Carter's claims against Lieber, Mandeville, and Reyes, which are based on their purported failure to identify and remedy due process violations at Carter's initial hearing, also fail because I conclude there was no due process violation at Carter's initial hearing.

In sum, summary judgment in favor of all defendants is warranted because even if, counterfactually, Carter had shown an atypical and significant hardship, he received all process that was due.

### III.

It is therefore ordered that Defendants' motion for summary judgment is granted. The clerk of the court is directed to enter judgment in favor of all Defendants and to terminate this action with prejudice.

DATED: May 11, 2012                         _/s/ J. Clifford Wallace_____
                                            J. Clifford Wallace
                                            United States Circuit Judge